Adrian Daniel GUAJARDO, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–03–00313–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Oct. 7, 2004.

Discretionary Review Refused
April 13, 2005.

Rosa Eliades, Houston, TX, for Appellant.

Charles A. Rosenthal, Jr., District Attorney-Harris County, William J. Delmore, III, Chief Prosecutor, Appellate Div., Amanda J. Peters, Assistant District Attorney, Houston, TX, for Appellee.

Panel consists of Justices NUCHIA, HANKS, and HIGLEY.

## OPINION

SAM NUCHIA, Justice.

Appellant, Adrian Daniel Guajardo, pleaded not guilty to sexually assaulting a child. A jury found appellant guilty and assessed punishment at 12 years in prison. Appellant asserts the following three points of error: (1) the factual insufficiency of the evidence to prove that appellant knowingly and intentionally committed a sexual assault; (2) jury charge error in the court's provision of a correct definition of the offense of public lewdness in response to a jury question; and (3) ineffective assistance of counsel because appellant's counsel did not object to the trial court's providing the definition of the offense of public lewdness. We affirm.

### A. BACKGROUND

Appellant became acquainted with D.L., a 15-year-old boy, through D.L.'s participation in his high school's cheerleading program. The cheerleaders and their coaches held training sessions at appellant's gymnastics center (the "gym") where appellant assisted in the cheerleaders' training. Appellant invited D.L. to a party to be held at the gym on the night of September 22, 2001. Appellant told D.L. that some high profile Olympic athletes would be at the party. D.L. obtained his mother's permission to attend the party. His mother set a curfew of 11:00 p.m.

On the night of the party, appellant and his roommate, Raul Hernandez,[1] picked D.L. up from his mother's house and took him to their apartment near the gym before going to the party. While they were in appellant's apartment, D.L. watched cheerleading videos and drank alcoholic beverages, supplied by appellant, with appellant and appellant's friends. D.L. drank vodka and some shots of liquor. D.L., appellant, and the others then left for the party at the gym.

Alcohol was also served to the celebrants at the party, who appeared to D.L. to be predominantly teenagers. Appellant and D.L. left the party together after only 30 to 45 minutes and returned to appel-

---

1. In his testimony, D.L. sometimes refers to Mr. Hernandez as "Rafael" rather than "Raul."

lant's apartment shortly before D.L.'s 11:00 p.m. curfew. At the apartment, D.L. resumed drinking alcoholic beverages and began to feel nauseated. D.L. then passed out in appellant's living room. The next memory D.L. had was of his throwing up in appellant's bathroom. D.L. did not remember how he got from the living room to the bathroom; however, he did recall that appellant was in the bathroom with him and gave him a towel to clean himself up.

Appellant then either led or carried D.L. from the bathroom to his bed, where D.L. lay down and fell asleep. D.L. testified that he woke up when appellant pulled off D.L.'s boxers and performed oral sex on him. D.L. stated that he was too intoxicated to move or protest and that appellant also stuck his own penis into D.L.'s mouth. Later, D.L. woke up again and found that appellant was asleep. He gathered his clothes, dressed, called his mother and gave her directions to appellant's apartment.

D.L.'s mother testified that, when D.L. did not arrive home at 11:00 p.m., she repeatedly called his cell phone and appellant's cell and home phones. At approximately midnight, she finally reached appellant, who told her that D.L. was sick and intoxicated and that he believed D.L. should stay at appellant's apartment. D.L.'s mother disagreed, and the two made arrangements for appellant to take D.L. to the gym where his mother would pick him up in a few minutes. D.L.'s mother testified that she waited at the gym until approximately 3:00 a.m., but appellant did not show up. Later, when she received her son's call and picked him up, he did not tell her about the assault. Appellant's only attempt to call D.L.'s mother was after he awoke to find D.L. gone. D.L.'s mother testified that D.L. was withdrawn in the weeks following the incident,

did not want to speak to friends, and was unusually quiet.

D.L. testified that appellant contacted him a few months after the assault and told him that someone had watched the sexual assault and that a videotape might exist. After this telephone call, D.L. told his grandmother about the sexual assault. His mother and grandmother contacted a police officer with whom the grandmother was acquainted. D.L. stated that, approximately a month after he told his grandmother about the sexual assault, appellant contacted him again. D.L. testified that appellant said he could stop the videotape from being distributed to all of the local high schools if D.L. had another sexual encounter with him. D.L. told his mother and grandmother about the second call.

## B. DISCUSSION

### 1. Factual Insufficiency

■ In his first point of error, appellant asserts that the State's case relies entirely on the testimony of D.L., that D.L.'s testimony is not credible, and that, therefore, the evidence is factually insufficient to support appellant's conviction. Specifically, appellant argues that D.L.'s testimony is not credible because D.L. was acutely intoxicated, was unconscious for a period of time, and testified that he did not resist the alleged attack. Appellant also attacks D.L.'s credibility by offering a possible motivation for D.L. to make a false allegation—that D.L. was afraid appellant would inform high school officials and cheerleading coaches about his drinking.

In a factual sufficiency review, we view all the evidence in a neutral light, and we will set the verdict aside only if the evidence is so weak that the verdict is clearly wrong and manifestly unjust, or the contrary evidence is so strong that the standard of proof beyond a reasonable doubt

could not have been met. *Escamilla v. State*, 143 S.W.3d 814, 817 (Tex.Crim.App., 2004) (citing *Zuniga v. State*, 144 S.W.3d 477, 484 (Tex.Crim.App., 2004)). The appellate court should not substitute its own judgment for that of the fact finder. *Jones v. State*, 944 S.W.2d 642, 648 (Tex. Crim.App.1996).

Appellant's argument goes to D.L.'s credibility as a witness and is a matter for the determination of the jury. The jury is the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given to the witnesses' testimony. *Jaggers v. State*, 125 S.W.3d 661, 671 (Tex. App.-Houston [1st Dist.] 2003, pet. ref'd). The jury may believe all, some, or none of any witness's testimony. *See Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App. 1986) (stating that jury "could choose to believe or not believe the witnesses, or any portion of their testimony").

We hold that the evidence was factually sufficient for the jury to be rationally justified in finding guilt beyond a reasonable doubt. We overrule appellant's first point of error.

## 2. Jury Charge

■ In his second point of error, appellant asserts that the trial court erred in defining the offense of public lewdness in the jury charge. Appellant did not timely and properly object at trial; however, he claims that he suffered egregious harm from the error.[2] Because we hold that there was no error, we do not reach the harm analysis. *Nguyen v. State*, 811

S.W.2d 165, 167 (Tex.App.-Houston [1st Dist.] 1991, pet. ref'd) ("When reviewing a trial court's jury instructions, the appellate court should first determine whether the charge given was erroneous.").

On direct examination, appellant testified that he had previous convictions for public lewdness, credit card abuse, and theft by check. Before deliberations on guilt-innocence, the jury was instructed to consider appellant's prior convictions for impeachment purposes only. In his closing argument, appellant's counsel reminded the jury of appellant's public lewdness conviction and stated that there was no evidence that appellant had ever used "force." The jury, after beginning its deliberations on guilt-innocence, sent out a question asking the court for the definition of public lewdness. The court submitted a correct definition of public lewdness to the jury with no objection from defense counsel.[3]

Appellant now asserts that the trial court, by providing the definition of public lewdness, emphasized the conviction unduly, informed the jury about the specific facts of the case, and commented on the weight of the evidence.

■ When the trial judge responds substantively to a jury question during deliberations, that communication essentially amounts to an additional or supplemental jury instruction. *Daniell v. State*, 848 S.W.2d 145, 147 (Tex.Crim.App.1993). A trial court has broad discretion in submitting proper definitions to the jury. *Roise v. State*, 7 S.W.3d 225, 242 (Tex.

---

2. When appellant makes no timely and proper objection to the jury charge, we consider the complaint on appeal only if appellant *shows egregious harm*. *Mann v. State*, 964 S.W.2d 639, 641 (Tex.Crim.App.1998); *Almanza v. State*, 686 S.W.2d 157, 159 (Tex.Crim.App. 1985).

3. The trial court submitted this instruction to the jury: Public Lewdness—A person commits an offense if he knowingly engages in a sex act in a public place or, if not in a public place, he is reckless about whether another is present who will be offended or alarmed by him. Public lewdness is a class A misdemeanor.

App.-Austin 1999, pet. ref'd). A trial court is allowed to give a supplemental instruction if requested by the jury. *See Garza v. State*, 55 S.W.3d 74, 77 (Tex.App.-Corpus Christi 2001, pet. ref'd) (stating that, if prerequisites of article 36.16 are met, court may give supplemental charge); Tex.Code Crim. Proc. Ann. art. 36.16 (Vernon Supp. 2004). The question of whether the trial court erred by providing the jury with the correct statutory definition of a prior conviction in response to a jury request is one of first impression in this court. However, in *Dodson v. State*, a case decided by the Tyler Court of Appeals, the defendant had a prior conviction for aggravated perjury, which was presented to the jury in the form of a judgment and sentence. 699 S.W.2d 251, 256 (Tex.App.-Tyler 1985, no pet.). During the punishment phase, the jury sent a note to the court asking, "[w]hat is aggravated perjury?" *Id.* (alteration in original). Over defense counsel's objection, the trial court provided the jury with the correct statutory definition of aggravated perjury. *Id.* The court of appeals held that this was not error, stating that "if the title of an offense is not self-explanatory to lay jurors, a correct definition thereof is helpful and prevents speculation as to the meaning and character of the prior offense." *Id.* We find *Dodson* sufficiently analogous to this case and the Tyler court's reasoning persuasive. We hold that, when the jury has heard evidence of a prior conviction, providing the jury with a statutorily correct definition of that offense in response to a jury question is not error. We overrule appellant's second point of error.

### 3. Ineffective Assistance of Counsel

In his third point of error, appellant argues that his trial counsel was ineffective because he did not object to the supplemental charge defining the offense of public lewdness. Because it was not error to provide the definition, counsel was not ineffective for failing to object. *Collum v. State*, 96 S.W.3d 361, 367 (Tex.App.-Austin 2002, no pet.) ("[C]ounsel does not render ineffective assistance of counsel by failing to preserve an error that is not reversible.").

We overrule appellant's third point of error.

### C. CONCLUSION

We affirm the judgment of the trial court.