Opinion issued November 30, 2006






    









In The
Court of Appeals
For The
First District of Texas




NO. 01-05-00922-CR




VICTOR DELGADO, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 183rd District Court
Harris County, Texas
Trial Court Cause No. 1014841




MEMORANDUM OPINION

          A jury convicted appellant, Victor Delgado, of aggravated sexual assault of a
child and assessed punishment at seven years’ imprisonment. See Tex. Pen. Code
Ann. § 22.021 (Vernon Supp. 2003). In his sole issue on appeal, appellant argues
that the evidence was factually insufficient to support the jury’s verdict.
          We affirm.
Facts
            At the time of the offense, appellant lived with his wife, Hilda, their three
children, and his eight-year-old step-daughter, J.S., in an apartment in Houston,
Texas. Appellant and Hilda have been married since J.S. was an infant; he is the only
father J.S. has ever known. In that time, the family has lived in at least four different
places, sometimes requiring J.S. to change schools. 
          Appellant’s marriage was a volatile one. He and Hilda fought in front of the
children on many occasions, sometimes getting physical with one another. As a result
of these fights, appellant was twice convicted of assaulting Hilda. In October 2004,
Hilda also was convicted of assaulting appellant and spent seven days in jail. When
Hilda returned home, she found that appellant had gone to Florida to find work as a
carpenter and that the children were staying with her pastor.
          A few weeks later, J.S. told Hilda that she had something to tell her, but that
Hilda probably would not want to hear it. When Hilda assured J.S. that she could tell
her anything, J.S. said, “Poppy touched me and he licked me.” Hilda immediately
called the police. 
          On November 16, 2004, Amy McAndrew, a forensic interviewer at the Harris
County Children’s Assessment Center, interviewed J.S. When McAndrew asked J.S.
why she was there, J.S. responded that her father had touched and licked her private
parts. In response to further questioning, J.S. said that appellant had made her touch
his penis and that he had put his fingers in her private parts—i.e., her vagina.



          Sometime in early December 2004, J.S. became upset when Hilda would not
let her use her cell phone and said, “Well, mommy, I’m . . . going to tell them that
Poppy didn’t do anything to me . . . .” Her mother responded that she (Hilda) could
go to jail for lying to the police if J.S. were to say that. J.S. apologized and never
again talked about it. Hilda reported this event to Child Protective Services.
          On December 6, 2004, at least one month after the last incident of abuse,
W. Lilly, a detective with the Harris County Sheriff’s Child Abuse Unit, was assigned
to investigate J.S.’s case. He testified at trial that, while he normally tries to gather
DNA and other medical evidence in sexual assault cases, he did not require a medical
examination in this case because, in his experience, digital and oral penetration of a
sexual organ typically does not produce DNA or other medical evidence, such as tears
or scars.
          At trial, J.S. gave detailed descriptions of the assaults. The first time appellant
assaulted her, she was lying in appellant’s bed. He pulled her shorts and panties to
her knees and then touched and put his fingers into her vagina. She also said that he
licked her private parts, but later said that the licking did not happen until later. 
According to J.S., appellant touched or put his fingers into her vagina another “four
or five or six” times. The first time that appellant licked J.S.’s vagina happened after
J.S. had gone to bed. According to J.S., appellant entered the room she shared with
her siblings, pulled the blanket over her head, pulled her shorts and panties to her
knees, and licked her vagina. J.S. testified that appellant licked her another five or
six times. Appellant assaulted J.S. for the last time in October 2004, the same day
Hilda was arrested and taken to jail.
          When asked if she was angry when her mom went to jail, J.S. answered, “Kind
of when my dad put my mom in jail.” J.S. also denied telling her mom that she had
fabricated the abuse because she was mad about not being able to use the cell phone. 
J.S. also explained that she had talked to many people about what had happened,
including Carol Barrett, her counselor at DePelchin Children’s Center.
          At trial, Hilda testified that, since the time J.S. made the allegations, her
behavior had changed. J.S. had been unable to sleep, had cried for hours, and had had
a nightmare about appellant. Anywhere that Hilda went, J.S. had wanted to go too,
she cried when Hilda left, and, whenever Hilda was gone, J.S. had called her
repeatedly. Ultimately, Hilda lost her job because she had to stay home with J.S. 
          Barrett, J.S.’s counselor, testified that when a child is traumatized, especially
one traumatized by sexual abuse, that child often lacks the ability to trust and to talk
to people. In the instant case, J.S. refused to talk directly to Barrett about the abuse,
only speaking to and through her mother. Only in later sessions did J.S. speak to
Barrett, and then only to tell her that she did not want to return to school and that she
was afraid to go to court. On cross-examination, Barrett admitted that moving and
changing schools, witnessing domestic violence in the home, and being separated
from one’s mother can be traumatic, can cause nightmares and anxiety, and can cause
a child to cling to her mother.
Discussion
          In his sole point of error, appellant argues that the evidence presented at trial
was factually insufficient to sustain his conviction for aggravated sexual assault of
a child.
          We begin the factual sufficiency review with the presumption that the evidence
supporting the verdict is legally sufficient. Clewis v. State, 922 S.W.2d 126, 134
(Tex. Crim. App. 1996). We view all the evidence in a neutral light,


 and we will set
aside the verdict only if the evidence is so weak that the verdict is clearly wrong and
manifestly unjust or the verdict is against the great weight and preponderance of the
evidence. Johnson v. State, 23 S.W.3d 1, 10–11 (Tex. Crim. App. 2000). Regarding
the second basis for a finding of factual insufficiency, “an appellate court must . . .
be able to say, with some objective basis in the record, that the great weight and
preponderance of the (albeit legally sufficient) evidence contradicts the jury’s verdict
before [the court] is justified in exercising its appellate fact jurisdiction to order a new
trial.” Watson v. State, No. PD–469–05, 2006 WL 2956272, at *10 (Tex. Crim. App.
Oct. 18, 2006) (emphasis omitted). For a review of factual sufficiency, we must
consider the most important evidence that the appellant claims undermines the
verdict. Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).
          Appellant contends that the evidence is factually insufficient for two reasons. 
First, he argues that to rely on J.S.’s testimony would be clearly wrong and unjust
because her credibility and reliability are so poor. More specifically, appellant points
out that (1) J.S. could have lied about the sexual assault because she was upset about
what she saw as appellant’s role in putting her mother in jail or because she was
afraid that her mother would be sent to jail if she recanted her story; (2) J.S.’s
testimony was inconsistent as to the clothes she was wearing during the assault and
how appellant first sexually assaulted her; and (3) J.S.’s testimony was partially
rebutted by her mother and her therapist. This argument, however, goes to the
credibility of J.S. as a witness, which is a matter for the determination of the jury. See
Guajardo v. State, 176 S.W.3d 402, 405 (Tex. App.—Houston [1st Dist.] 2004, pet.
ref’d). Our evaluation may not intrude upon the fact finder’s role as the sole judge
of the weight and credibility accorded any witness’ testimony. Cain v. State, 958
S.W.2d 404, 407 n.5 (Tex. Crim. App. 1997). What weight to give contradictory
testimonial evidence is within the sole province of the fact finder because it turns on
an evaluation of credibility and demeanor. Id. at 407–09. The fact finder is free to
believe all, some, or none of the testimony presented. Hughes v. State, 897 S.W.2d
285, 289 (Tex. Crim. App. 1994). We must defer appropriately to the fact finder to
avoid substituting our judgment for its judgment. See Johnson, 23 S.W.3d at 7. 
          Appellant further points out that J.S.’s nightmares and separation anxiety can
be symptoms associated with not only sexual abuse, but also domestic violence,
frequent moves and school changes, and the trauma of her mother going to jail. Here,
the jury was free to accept those portions of J.S.’s testimony that support the
conviction—namely that appellant, on several different occasions, had touched,
licked, and put his fingers into her vagina—and disregard any inconsistent or
contradictory evidence. A decision is not manifestly unjust merely because the jury
resolved conflicting views of the evidence in favor of the State. Cain, 958 S.W.2d
at 410. 
          Second, appellant argues that because there was no physical, medical, or other
corroborating evidence of J.S.’s claim, the unreliability of J.S.’s testimony is a fatal
flaw. The testimony of a child victim alone, however, is sufficient to support a
conviction for aggravated sexual assault. See Carty v. State, 178 S.W.3d 297, 303
(Tex. App.—Houston [1st Dist.] 2005, pet. ref’d) (citing Ruiz v. State, 891 S.W.2d
302, 304 (Tex. App.—San Antonio 1994, pet. ref’d)). Furthermore, a lack of physical
or medical evidence in a sexual assault case does not automatically render the
evidence factually insufficient when, due to the circumstances of the assault, no
physical or medical evidence remains. See Washington v. State, 127 S.W.3d 197,
204–05 (Tex. App.—Houston [1st Dist.] 2003, pet. dism’d, untimely filed). In
Washington, for example, we overruled a challenge to the factual sufficiency of the
evidence, noting that the appellant could have used a condom, thus preventing the
transmission of any sexually transmitted diseases, and that the victim bathed after the
assault and waited 18 hours before going to the hospital. Id. at 205.
          Here, Detective Lilly did not require a medical examination prior to referring
the case to the District Attorney because, in his experience, digital and oral
penetration of a sexual organ typically does not produce DNA evidence or medical
evidence, such as tears or scars. Detective Lilly also testified that at least a month
had passed between the last incident of abuse and the time he was assigned to the
case. Due to the circumstances of J.S.’s case, therefore, it is unlikely that physical or
medical evidence would have remained. See id. at 204–05.
          Thus, after neutrally examining all the evidence,


 we conclude that the proof
of guilt was not so weak that the verdict is clearly wrong or manifestly unjust nor is
the verdict against the great weight and preponderance of the evidence. See Johnson,
23 S.W.3d at 10–11.
          We overrule appellant’s sole point of error.
Conclusion
          We affirm the judgment of the trial court.
 
 
 
                                                                        Evelyn V. Keyes
                                                                        Justice

Panel consists of Justices Taft, Keyes, and Hanks.

Do not publish. Tex. R. App. P. 47.2(b).