Affirmed and Opinion filed February 5, 2008








Affirmed and Opinion filed February 5, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00250-CR

____________

 

JAMES ARTHUR NEWBY, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 23rd
District Court

Brazoria County, Texas

Trial Court Cause No. 49,625

 



 

O P I N I O N

A jury found appellant, James Arthur Newby, guilty of three
counts of sexual assault of a child and assessed punishment at twenty years= confinement in
the Texas Department of Criminal Justice, Institutional Division for each
count.  See Tex. Penal Code Ann. ' 22.011(a)(2)
(Vernon 2003).  The court ordered the sentences to run consecutively.  In three
issues, appellant argues the evidence is factually insufficient to sustain the
verdict and the trial court erred in denying two motions for mistrial after the
prosecutor made improper arguments.  








Factual and Procedural Background

During the summer of 2003, R.S. met appellant in Freeport,
Texas while swimming with some friends.  Appellant approached the group of kids
and invited them to go kayaking.  R.S. took appellant up on his offer and went
kayaking with him.  After that day, R.S. began spending a lot of time with
appellant.  R.S. often helped appellant with tasks such as mowing the lawn,
cleaning the garage, or cleaning appellant=s truck, and in
return, appellant would pay R.S.

In December 2003, R.S. moved from Freeport, Texas to
California to live with his mother.  From California, R.S. moved to North
Carolina for a short period of time and then moved to Montana.  While R.S. was
living in Montana, Detective Kipp Tkachyk, an officer with the Flathead County
sheriff=s office, contacted
R.S. regarding appellant.  Detective Tkachyk questioned R.S. about his
relationship with appellant.  Eventually, R.S. made a written statement
alleging appellant had sexually assaulted him on multiple occasions.  Appellant
was subsequently charged with three counts of sexual assault of a child.       

During trial, Detective Tkachyk testified he had been
contacted by an officer from the Freeport Police Department, and after their
conversation, he contacted R.S. to question him about his relationship with
appellant.  According to Detective Tkachyk, R.S. and his father met with
Detective Tkachyk on April 19, and R.S. initially denied any sexual advances by
appellant.  Detective Tkachyk testified approximately ten minutes after their
meeting, R.S. came back to the detective=s office and asked
if he could write his statement down.  R.S. indicated he was uncomfortable with
his father in the room, and he would rather write the statement down.  On May
4, Detective Tkachyk contacted R.S. and asked if he was still willing to
provide a written statement.  On May 5, R.S. provided the statement.








R.S. testified the first inappropriate incident occurred
the second time appellant took R.S. kayaking.  According to R.S., after they
were done kayaking, R.S. changed out of his wetsuit in appellant=s pickup, and
appellant commented that R.S. had a Anice dick.@  Appellant and
R.S. then went back to appellant=s house, and
appellant asked R.S. if he wanted to watch a movie.  R.S. testified appellant
put in a pornographic movie, sat next to R.S., and began masturbating.  R.S. testified
appellant told him he could masturbate with him, but R.S. felt uncomfortable
and did not do it.

R.S. testified a similar incident occurred when he went to
appellant=s house to see if appellant had any work he could do. 
Appellant invited R.S. in and offered him a drink.  According to R.S., the two
started talking and after awhile appellant put in a pornographic movie.  R.S.
testified appellant again began to masturbate, and then appellant unzipped R.S.=s pants and began Aplaying@ with R.S.

The next incident between R.S. and appellant occurred one
afternoon when R.S. went over to visit appellant.  R.S. testified appellant
once again began playing a pornographic movie and masturbating.  R.S. testified
appellant asked him if he Awanted a blow job,@ and R.S.
responded AI don=t know.@  According to
R.S., appellant got on the floor and stuck his mouth on R.S.=s penis for
approximately ten minutes. 

R.S. testified to another incident which occurred when R.S.
went over to appellant=s house to visit.  R.S. testified to the
same pattern of events, but this time appellant asked R.S. if he wanted Ato give
[appellant] a blow job.@  R.S. testified appellant would not stop
asking, so R.S. finally gave in and stuck appellant=s penis in his
mouth.








Last, R.S. testified about an incident which occurred one
afternoon when appellant asked if R.S. would give him a full body massage. 
R.S. testified appellant went into his room, took off all of his clothes, and
lay on his bed.  According to R.S., appellant next asked R.S. to remove his
clothes.  R.S. complied and began rubbing appellant=s back.  R.S.
testified appellant was lying on the bed and R.S. was sitting behind him.  R.S.
testified appellant put some of the baby oil on R.S.=s penis and then
pulled him so close R.S.=s penis went inside appellant=s anus.  R.S.
testified after this incident occurred, appellant told R.S. if he tried to turn
him in, the police would not be able to do anything because R.S. had consented.

According to R.S., he was younger than seventeen when he
and appellant had a sexual  relationship.  R.S. testified he lived with his
grandmother during the summer of 2003, and he and his grandmother had a good
relationship.  R.S., however, did not tell his grandmother about appellant=s actions because
he Adidn=t think about it@ and because
appellant told R.S. he had consented.  R.S. further testified he did not tell
anyone because he did not think anyone would help him and because he was
afraid.

On cross-examination, R.S. testified he went to appellant=s house over
thirty times during the summer of 2003.  R.S. testified he knew what was
happening was wrong, but he kept going back because he was afraid appellant
would come after him if he stopped visiting.  When asked by defense counsel if
he ever looked at the pictures in appellant=s house, R.S.
responded he had Aseen a few of them, but [he could not]
recall what they [were].@  R.S. also testified he thought appellant
kept his pornographic movies in his living room by the VCR; however, the
Freeport Police Department did not find any pornographic videos in appellant=s house.  R.S. was
also unable to recall whether appellant had any significant scars on his body
or whether appellant was circumcised.  R.S. admitted he told Detective Tkachyk
twice that appellant did not make any sexual advances towards him, but he later
decided to make a written statement.








Mary Fernen, R.S.=s grandmother,
testified R.S. lived with her in Freeport during the summer of 2003.  Fernen
testified appellant came to her house on many occasions to talk with R.S. and
ask if he wanted to do work at appellant=s house.  Fernen
testified appellant would not come in the house, but instead, he would call
R.S. to his vehicle.  According to Fernen, R.S. would come back in to tell her
he was going to appellant=s house, but he often looked as if he did
not want to go.  Fernen testified R.S. was a good kid, he did not get into
trouble at school, and he made good grades.  Fernen also testified R.S. was
supposed to participate in a school play, but he became depressed and dropped
out.  Fernen testified this occurred around the time R.S. was involved with
appellant.

Mary Lee Stotler testified she worked as the branch manager
for the Boys and Girls Club during the summer of 2003.  Stotler testified she
saw appellant at the Boys and Girls Club two or three times.  Stotler further
testified appellant approached her about becoming a volunteer for the club, but
he became very defensive and angry when she informed appellant about the
mandatory background check.  Stotler testified she never saw appellant with
R.S., but appellant told her R.S. was troubled and having a difficult time. 
According to Stotler, appellant seemed to indicate he was R.S.=s mentor.  Stotler
also testified she had seen a photograph of appellant with R.S. and several
other boys; however, Stotler was recalled later and testified she had mistaken
another boy for R.S.

Appellant did not testify and did not call any witnesses. 
The jury found appellant guilty of all three counts of sexual assault of a
child and assessed punishment at twenty years= confinement in
the Texas Department of Criminal Justice, Institutional Division and a $10,000
fine for each count.  See id.  The court ordered the sentences to run
consecutively.  This appeal followed.          

Discussion

A.      Was the
Evidence Factually Insufficient?








In his first issue, appellant argues the evidence was
factually insufficient to sustain his conviction because the complaining
witness lacked any semblance of credibility.[1] 
Appellant admits in his brief this point of error is based solely on R.S.=s lack of
credibility, and the issue is whether obvious credibility problems alone can
serve as the basis for factual insufficiency.  Appellant=s reasons for R.S.=s lack of
credibility include: (1) R.S. could not describe the inside of appellant=s house despite
having been there more than thirty times; (2) R.S. could not describe any scars
on appellant=s body; (3) R.S. did not know whether appellant was
circumcised despite seeing him naked; (4) R.S. could not explain why he
continued to go to appellant=s house; (5) R.S. did not make an outcry
statement until approached by a detective in Montana several years later; (6)
R.S.=s testimony was
uncorroborated by both physical and testimonial evidence; (7) R.S. could not
keep his dates straight when testifying; and (8) although the jury was informed
R.S. was on probation, they were not informed he was on probation for
aggravated sexual assault.[2] 


1.       Standard
of Review








In a
factual sufficiency review, we consider all the evidence in a neutral light.  Prible
v. State, 175 S.W.3d 724, 730B31 (Tex. Crim. App. 2005).  The
evidence may be factually insufficient in two ways.  Id. at 731.
 First, when considered by itself, evidence supporting the verdict may be
so weak the verdict is clearly wrong and manifestly unjust.  Id.  Second,
where the evidence both supports and contradicts the verdict, the contrary
evidence may be strong enough that the beyond-a-reasonable-doubt standard could
not have been met.  Id.  In conducting a factual sufficiency review, we
must employ appropriate deference so that we do not substitute our judgment for
that of the fact finder.  Jones v. State, 944 S.W.2d 642, 648 (Tex.
Crim. App. 1996).  Our analysis must consider the evidence appellant claims is
most important in allegedly undermining the jury=s verdict.  Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003). 

2.       Analysis

Appellant argues the State=s case at trial
was completely dependent on the testimony of R.S.  Appellant admits R.S.=s testimony
sufficiently covered all of the elements alleged in the indictment; however,
appellant argues R.S.=s complete lack of credibility can be the
basis of a factual insufficiency claim.  Appellant argues R.S.=s lack of
credibility makes the verdict Aclearly wrong and manifestly unjust.@  Appellant
heavily relies on the 1924 case of Green v. State to support his
position.[3] 
See Green v. State, 260 S.W. 195, 196 (Tex. Crim. App. 1924).  We find Green
distinguishable from the facts in this case.

In Green, the Court of Criminal Appeals held the
testimony of the complaining witnesses was so incredible and contrary to human
experience, a reversal was required.  Id. at 196.  In Green, the
State relied solely on the complaining witness=s testimony, and
the defendant testified on his own behalf and denied the allegations.  Id. 
In this case, the Court found the complaining witnesses=s account of how
the sexual act occurred and the position in which the alleged forcible act took
place unbelievable.  Id.  Additionally, the complaining witness did not
report the alleged rape until she discovered she was pregnant.  Id.  The
Court stated Athough the verdict should not be lightly annulled it
is our duty to set it aside and order another trial when the evidence viewed in
its strongest light from the standpoint of the state, fails to make guilt
reasonably certain.@  Id.  The Court determined under
these facts the conviction could not stand and reversed the case.  Id.








Several other cases in the 1930s used a similar analysis as
Green.  In each of those cases, like the Green case, the Court
found the complaining witness=s description of how the physical act
occurred dubious.  See Ballard v. State, 124 S.W.2d 131, 132B33 (Tex. Crim.
App. 1938) (holding the evidence insufficient because the complaining witnesses=s testimony the
offense occurred within six yards of her kitchen while she was standing up and
it did not hurt her or cause any soreness or blood flow was too uncertain and
unsatisfactory); Dodson v. State, 83 S.W.2d 992, 993B94 (Tex. Crim.
App. 1935) (holding the evidence insufficient because the position in which the
complaining witness placed herself in her testimony was doubtful and medical
evidence showed her hymen was not ruptured); Stevens v. State, 50 S.W.2d
284, 285 (Tex. Crim. App. 1932) (holding the evidence insufficient because the
complaining witnesses=s testimony on the manner in which the act
of intercourse took place and the testimony of the examining doctor placed
great doubt upon the truth of her testimony).








The case at hand is distinguishable from Green and
cases like it.  In this case, appellant does not argue R.S.=s explanation of
how the sexual acts occurred is incredible, which appears to be the primary
basis for the decisions in Green, Ballard, Dodson, and
Stevens.  See Green, 260 S.W. at 196; Ballard, 124 S.W.2d
at 132B33; Dodson,
83 S.W.2d at 993B94; Stevens, 50 S.W.2d at 285. 
Furthermore, more recent decisions have routinely held the jury is the sole
judge of the facts, the credibility of the witnesses, and the weight to be
given the evidence.  Wyatt v. State, 23 S.W.3d 18, 30 (Tex. Crim. App.
2000); Beckham v. State, 29 S.W.3d 148, 151 (Tex. App.CHouston [14th
Dist.] 2000, pet. ref=d).  The jury may believe or disbelieve
all or part of any witness=s testimony.  Jones v. State, 984
S.W.2d 254, 258 (Tex. Crim. App. 1998).  Courts give wide latitude to testimony
given by child victims of sexual
abuse.  See Villalon v. State, 791 S.W.2d 130, 134 (Tex. Crim. App.
1990) (stating we cannot expect a child victim to testify with the same clarity
and ability as mature, capable adults).  In this case, the jury heard R.S.=s unambiguous
testimony describing each of his sexual encounters with appellant.  The jury is
in the best position to evaluate the credibility of witnesses and the evidence,
and we must afford due deference to its determination.  Marshall v. State,
210 S.W.3d 618, 625 (Tex. Crim. App. 2006).  Further, there is no requirement
that the victim=s testimony be corroborated by medical or
physical evidence.  See Garcia v. State, 563 S.W.2d 925, 928 (Tex. Crim.
App. 1978) (holding victim=s testimony of penetration, standing
alone, was sufficient).   

We hold the evidence supporting the verdict was not so weak that the verdict was
clearly wrong and manifestly unjust.  See Prible, 175 S.W.3d at 731. 
Furthermore, the contrary evidence was not strong enough that the
beyond-a-reasonable-doubt standard could not have been met.  See id. 
Accordingly, we hold the evidence is factually sufficient to support appellant=s conviction.  See Guajardo v.
State, 176 S.W.3d 402, 404B05 (Tex. App.CHouston [1st
Dist.] 2004, pet. ref=d) (finding the evidence factually
sufficient despite appellant=s argument that the State=s case relied
entirely on the testimony of the complaining witness and the complaining witness
was not credible).   Appellant=s first issue is
overruled.

B.      Did the
Trial Court Err in Denying Appellant=s Motions for
Mistrial?

In his second and third issues, appellant argues the trial
court committed reversible error by denying  two motions for mistrial after the
prosecutor made improper jury arguments during his closing argument.  

First, appellant
complains of the following argument by the prosecutor:

You have got to talk about these disgusting things
that happened to [R.S.], and decide if Mr. Newby is guilty.  If you think that
Mr. Newby is not guilty, I want each of you to be able to walk out of this
courtroom, right by [R.S.], and say [R.S.], I don=t believe a word you said, because that=s what you have to do.








MR. MCGEE:         That=s incorrect, your Honor.  That=s mischaracterizing the law and the
evidence.  They just have to believe that there is a reasonable doubt, not that
they don=t believe anything that he said.

THE COURT:          Sustained.

MR. MCGEE:         Ask the jury to
be instructed to disregard.

THE COURT:          Jury is
instructed to disregard.

MR. MCGEE:         I am forced to
move for a mistrial by the state.

THE COURT:          Denied.

According
to appellant, this argument was contrary to the jury charge and the applicable
law because the jury was not required to totally reject R.S.=s testimony in
order to have reasonable doubt.  Appellant argues the statement lowered the
State=s burden of proof
and injected an improper consideration into the minds of the jury.

Appellant also complains of the following argument:

But you know what this is?  This is pretty creepy,
that after the summertime of 2003, when the defendant did all this stuff to
[R.S.], and then, in 2004, when Mary Stotler left the Boys and Girls Club and
was going to the Main Street Project is when she remembers this picture, with
three other young men that nobody knows who they are.  It=s not in the evidence before you.

MR. MCGEE:         Objection.  That=s misleading the jury.  We
know                        who they are.  It=s outside the record.

THE COURT:          Sustained.

MR. MCGEE:         Ask the jury to
be instructed to disregard.

THE COURT:          All right.  The
jury is instructed to disregard.

MR. MCGEE:         The state has
forced me to move for a mistrial.

THE COURT:          Denied.

According
to appellant, this argument was an attempt by the prosecutor to get the jury to
speculate as to other possible victims.

1.       Standard
of Review








When the trial court sustains an objection and instructs
the jury to disregard but denies a motion for mistrial, the issue is whether
the trial court abused its discretion by denying the mistrial.  Hawkins v.
State, 135 S.W.3d 72, 76B77 (Tex. Crim. App. 2004).  Almost any
improper argument may be cured by an instruction to disregard.  Dinkins v.
State, 894 S.W.2d 330, 357 (Tex. Crim. App. 1995).  A mistrial is the trial
court=s remedy for
improper conduct that is so prejudicial that expenditure of further time and
expense would be wasteful and futile.  Hawkins, 135 S.W.3d at 77.  

The question of whether a mistrial should have been granted
when a curative instruction has been given involves most, if not all, of the
same considerations that attend a harm analysis.  Id.  Therefore, in
cases in which constitutional rights are not implicated, courts employ a
multi-factored analysis which seeks to evaluate the effect of the harm on the
outcome of the trial.  See id.; Mosley v. State, 983 S.W.2d 249,
259 (Tex. Crim. App. 1998); Tucker v. State, 15 S.W.3d 229, 237B38 (Tex. App.CHouston [14th
Dist.] 2000, pet. ref=d).  Those factors to be considered in
determining whether the trial court abused its discretion in denying a mistrial
include: (1) the severity of the misconduct (magnitude of the prejudicial
effect); (2) measures adopted to cure the misconduct (efficacy of any
cautionary instruction by the judge); and (3) the certainty of conviction
absent the misconduct.  See Hawkins, 135 S.W.3d at 77 (applying the
three-factor test to improper arguments during the punishment phase); Mosley,
983 S.W.2d at 259; Tucker, 15 S.W.3d at 237B38 (applying the Mosley
factors to determine if improper argument during guilt/innocence phase
constituted reversal).  We do not find that any constitutional rights were
impinged upon by the prosecutor=s remarks in this case.  See Tucker,
15 S.W.3d at 237 (finding the trial court=s erroneous ruling
regarding improper comments made during jury argument involved
nonconstitutional error); Ortiz v. State, 999 S.W.2d 600, 605B06 (Tex. App.CHouston [14th
Dist.] 1999, no pet.) (finding that trial court=s error in
overruling the appellant=s repeated objections to arguments outside
the record constituted nonconstitutional error).  We therefore utilize the Mosley
factors to determine if a mistrial should have been granted. 

 








2.       Analysis

With respect to the first factor, we do not find the State=s improper
arguments were severe.  Appellant argues the first improper statement
essentially changed the burden of proof by telling the jury it would have to
reject R.S.=s testimony outright rather than view it within the
legal framework of reasonable doubt.  However, the judge properly explained the
burden of proof while reading the charge to the jury before closing arguments,
the defense counsel properly explained the burden in his final argument, and
the jury charge properly explained the standard.  In light of these proper
explanations, we do not find the improper statement by the prosecutor severe. 
With regard to the second statement, we find it vague and not severe.  See
Geuder v. State, 76 S.W.3d 133, 138 (Tex. App.CHouston [14th
Dist.] 2002), overruled on other grounds, 115 S.W.3d 11 (2003) (finding
a mistrial not necessary despite the statement Awho knows how many
other people defendant has stolen from in other counties@ by the prosecutor
in the guilt/innocence phase).

Second, we find the curative measure employed by the trial
court sufficient.  Appellant argues the simple instruction by the court that
the Ajury is instructed
to disregard@ is tepid and of limited curative effect.  However,
when counsel asks for a particular instruction and the trial court accedes to
the request by saying Athe jury is so instructed,@ that instruction
will in most cases be considered effective to cure the harm from an improper
argument.  Hawkins, 135 S.W.3d at 84.  Many other cases have found this
language to be a sufficient curative measure.  See Martinez v. State, 17
S.W.3d 677, 689B90 (Tex. Crim. App. 2000); Geuder,
76 S.W.3d at 138; Hamilton v. State, 818 S.W.2d 880, 882 (Tex. App.CHouston [14th
Dist.] 1991, pet. ref=d).  








Last, we find appellant=s conviction was
fairly certain, regardless of the prosecutor=s improper
remarks, considering the unambiguous testimony by R.S.[4] 
Accordingly, we hold the trial court did not abuse its discretion in finding
the prosecutor=s improper comments to the jury were not so
prejudicial that expenditures of further time and expense would be wasteful and
futile.[5] 
We overrule appellant=s second and third issues.

Conclusion

Having overruled all three of appellant=s issues, we
affirm the judgment of the trial court.

 

 

/s/      John S. Anderson

Justice

 

 

 

 

Judgment rendered
and Opinion filed February 5, 2008.

Panel consists of
Chief Justice Hedges and Justices Anderson and Boyce.

Publish C Tex. R. App. P. 47.2(b).                                  









[1]  As a factual sufficiency review begins with the
presumption that the evidence supporting the jury=s verdict is legally sufficient, and since appellant challenges only
the factual sufficiency of the evidence, he effectively concedes the evidence
is legally sufficient to sustain the conviction.  See Santellan v. State,
939 S.W.2d 155, 164 (Tex. Crim. App. 1997); Clewis v. State, 922 S.W.2d
126, 134 (Tex. Crim. App. 1996).





[2]  We find it necessary to point out that some of
appellant=s contentions regarding R.S.=s credibility are not true.  First, appellant argues
R.S. could not describe the inside of appellant=s house, which is a misstatement.  The record reflects defense counsel
asked R.S. if he looked at the pictures in appellant=s house, and R.S. stated he had seen a few of them but
could not recall what they were.  R.S.=s
inability to recall certain pictures in appellant=s house is very different than R.S. being unable to describe the inside
of appellant=s house.  Second, appellant argues R.S. could not
explain why he continued to go to appellant=s
house; however, R.S. testified on cross-examination he kept going back to
appellant=s house because he was afraid appellant would come
after him if he stopped going.  Third, R.S.=s
testimony was not completely uncorroborated because R.S.=s grandmother testified R.S. often acted as if he did
not want to go to appellant=s house, and
R.S. became depressed and dropped out of his school play around the time he was
involved with appellant.  Finally, the jury was not informed why R.S. was on
probation because the judge refused to let that information into evidence. 
Regardless, the issue of a witness=s
credibility is assigned to the jury.  See Wyatt v. State, 23 S.W.3d 18, 30 (Tex. Crim. App.
2000).





[3]  Appellant also cites Watson v. State in
support of his position, but his reliance is misplaced.  See Watson v. State,
204 S.W.3d 404, 410 (Tex. Crim. App. 2006).  Watson cites to Green
and explains its holding only as a historical reference to past factual
sufficiency standards.





[4]  Appellant also argues other comments made by the
prosecutor contributed to the error.  Appellant argues two statements made by
the prosecutor regarding R.S.=s credibility
and appellant=s failure to testify compounded the error and,
therefore, a mistrial was needed.  Appellant, however, failed to object to
these comments during trial.  A defendant=s
failure to object to a jury argument forfeits his right to complain about the
argument on appeal.   Cockrell v. State, 933 S.W.2d 73, 89 (Tex. Crim.
App. 1996) (holding that appellant waived  review of his claim that the
prosecutor impermissibly commented on appellant=s failure to testify during closing argument where no objection was
lodged); see Wead v. State, 129 S.W.3d 126, 130 (Tex. Crim. App. 2004)
(holding the court of appeals erred in considering appellant=s argument that the prosecutor=s comments amounted to a comment on appellant=s failure to testify since appellant made no such
argument in the trial court).





[5]  Appellant also conducts a harm analysis regarding
the comments made by the prosecutor and argues the failure to grant a mistrial
resulted in harm.  A harm analysis is employed only when there is error, and
ordinarily, error occurs only when the trial court makes a mistake.  Hawkins,
135 S.W.3d at 76.  Here, the trial court sustained the defense objection and
granted the requested information to disregard.  See id.  The only
adverse rulingBand thus the only occasion for making a mistakeBwas the trial court=s
denial of the motion for mistrial.  See id. at 76B77.  Under those circumstances, the proper issue is
whether the refusal to grant the mistrial was an abuse of discretion.  Id.
at 77.  Therefore, we will not conduct a harm analysis.