Affirmed and Memorandum Opinion
filed October 20, 2009.

      

In
The

Fourteenth
Court of Appeals



NOs. 14-08-00509-CR, 14-08-00511-CR



Richard Foster, Appellant 

v.

The State of
Texas, Appellee 



On Appeal from
the 178th District Court

Harris County, Texas

Trial Court
Cause Nos. 1057395, 1161075



 

MEMORANDUM OPINION 

Appellant Richard Foster appeals his convictions for
capital murder and aggravated robbery, challenging the factual sufficiency of
each conviction.  We affirm.

I.  Factual and
Procedural Background

Police officers were dispatched to an apartment
complex in response to a call notifying them of a homicide.  Inside one
apartment, the officers found the body of complainant Gregory Sartain, who died
of gunshot wounds, and complainant Bennie Curtis, who had sustained multiple gunshot
injuries.  Curtis told the officers that he had been robbed and shot by a man named
“Richard” and another man three days before the officers arrived.  After being
injured, Curtis remained in the apartment for several days before a friend
discovered him and notified authorities.  

In the course of the investigation, Curtis told
investigators that he recognized the assailants from the apartment complex. 
Investigators learned from Curtis that the man named Richard was associated
with an apartment located downstairs and across from Curtis’s apartment.  Investigators
worked with managers at the apartment complex, who offered information about a resident
named Ricardo Irvin in apartment # 601.  Investigators placed Irvin’s photo in
a photo line-up, and Curtis identified Irvin from the photo line-up as the
“second gunman” who pointed a gun and participated in the robbery.  According
to investigators, Curtis indicated that Irvin did not shoot either Sartain or
Curtis.

Officers attempted to serve an arrest warrant on Irvin
at apartment # 601, which was vacant.  Officers were directed to a different
apartment, # 505, where Irvin had been observed.  Inside # 505, officers
located a hospital medical card bearing appellant’s name, birthdate, and social
security number, and a Medicaid card belonging to appellant.  With the
information from the cards, officers created a photo line-up which included a
photo of appellant.  Curtis identified appellant as the person who shot Sartain
and him.  Inside the apartment, officers also recovered a box of .357 magnum ammunition
as well as a photo of appellant with other people.  From the photo, Curtis confirmed
appellant was the “same Richard” who lived below him and who shot Sartain and
him.  

An autopsy report indicated Sartain died of two
gunshot wounds to his head and neck.  A firearms expert determined that a
bullet recovered from Sartain’s body was consistent with having been fired from
a .38 special or a .357 firearm and was consistent with the same type of
ammunition that investigators recovered in the apartment.  

In Curtis’s recorded statement to investigators, he
described how he first encountered appellant, a man then-known to him only as
“Richard,” and Irvin at a night club on the night of the shooting.  Curtis
explained how appellant and Irvin later came to his apartment that evening to
use Curtis’s phone and how they left after making a phone call, and returned
again later in the evening bearing guns.  Curtis told investigators that the
men took money from Sartain and him before they forced Curtis and Sartain
downstairs into Sartain’s apartment in the same complex.  Curtis told the
investigators that appellant shot Sartain in the head and chin and that Irvin
fired once at Sartain.  Curtis told investigators that appellant then fired at
him.  Curtis described appellant’s gun as a black revolver with a red tip.  In
the recorded statement, Curtis confirmed that the man he identified as
appellant from the photo line-up lived in apartment # 505, which was located
downstairs and across from Curtis’s own apartment.  Curtis confirmed that he
recognized Irvin, as identified in a photo line-up, from apartment # 601.

Appellant was charged by two separate indictments
with capital murder of Sartain and aggravated robbery of Curtis.  Appellant
pleaded “not guilty” to each charge.  The causes were consolidated for a jury trial. 


At trial, the court admitted as evidence Curtis’s
recorded statement to investigators; however, Curtis admitted at trial that he
lied to investigators about seeing appellant at a night club earlier that
evening.  Curtis testified at trial that he first encountered appellant on the
night of the shooting when appellant knocked on the door to Curtis’s
apartment.  Curtis recalled that appellant asked to borrow Curtis’s phone,
inquired about marijuana, and left the apartment shortly after making a phone
call.  Curtis testified that around midnight appellant and Irvin knocked on
Curtis’s door and forced their way inside, bearing .357 guns.  Appellant
demanded money from Curtis.  Curtis gave appellant money and marijuana. 
Sartain gave money to Irvin.  Appellant and Irvin searched Curtis’s drawers and
a suitcase.

Curtis testified how appellant and Irvin then forced Sartain
and Curtis downstairs to Sartain’s apartment.  Curtis recounted that appellant
and Irvin searched Sartain’s apartment and found marijuana.  Curtis remembered hearing
Irvin accuse Sartain of touching a gun and how Sartain apologized and then
Curtis heard gunshots.  He testified that he saw Irvin shoot Sartain one or two
times.  On cross-examination Curtis testified that both appellant and Irvin
shot Sartain before turning their guns on Curtis, firing multiple times.  Curtis’s
testimony at trial varied from his recorded statement as to the amount of money
taken from him, the number of shots fired at him, and the length of his
hospital stay for his recovery.  

A jury found appellant guilty as charged on each
offense.  The trial court sentenced appellant to life imprisonment without
parole for the conviction of capital murder and twenty-five years’ confinement
for aggravated robbery.  The court ordered the sentences to be served concurrently. 
On appeal, appellant challenges the sufficiency of the evidence to support his
convictions.

II.  Issues and Analysis

In two issues, appellant asserts the evidence is
factually insufficient to support his convictions for capital murder and aggravated
robbery.[1] 
According to appellant, the only evidence supporting his convictions is Curtis’s
account of the events.  Appellant claims Curtis’s testimony is unreliable
because Curtis offered inconsistent facts regarding the amount of money taken from
him, which assailant shot Sartain, the number of injuries he sustained, and the
length of his hospital stay for his recovery.  Appellant characterizes Curtis’s
testimony as untrustworthy because Curtis is a convicted felon who sold drugs
and admitted lying to investigators about the events leading up to the shootings.

When evaluating a challenge to the factual sufficiency
of the evidence, we view all the evidence in a neutral light and inquire
whether we are able to say, with some objective basis in the record, that a
conviction is clearly wrong or manifestly unjust because the great weight and
preponderance of the evidence contradicts the jury’s verdict.  Watson v.
State, 204 S.W.3d 404, 414B17
(Tex. Crim. App. 2006).  It is not enough that this court harbor a subjective
level of reasonable doubt to overturn a conviction that is founded on legally
sufficient evidence, and this court cannot declare that a conflict in the
evidence justifies a new trial simply because it disagrees with the jury=s resolution of that
conflict.  Id. at 417.  If this court determines the evidence is
factually insufficient, it must explain in exactly what way it perceives the
conflicting evidence greatly to preponderate against conviction.  Id. at
414B17.  Our
evaluation should not intrude upon the fact finder’s role as the sole judge of
the weight and credibility given to any witness’s testimony.  See Fuentes v.
State, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999).  In conducting a factual‑sufficiency
review, we discuss the evidence appellant claims is most important in allegedly
undermining the jury’s verdict.  Sims v. State, 99 S.W.3d 600, 603 (Tex.
Crim. App. 2003).

A person commits the offense of capital murder if
that person intentionally or knowingly causes the death of an individual while
in the course of committing a felony.  Tex.
Penal Code Ann. §§ 19.02(b)(1), 19.03(a)(2) (Vernon 2003 & Supp.
2007).  In the first indictment in this case, the State charged appellant with
intentionally causing the death of Sartain by shooting Sartain with a firearm,
a deadly weapon, while in the course of committing or attempting to commit a
robbery of Sartain.  A robbery is a second-degree felony.  Tex. Penal Code Ann. § 29.02(b) (Vernon
2003).  

In the second indictment, the State charged appellant
with intentionally threatening and placing Curtis in fear of imminent bodily
injury and death while in the course of committing theft of property owned by
Curtis and with intent to obtain and maintain control of the property while
using a firearm, a deadly weapon.  A person commits the offense of robbery if,
in the course of committing theft and with intent to obtain and maintain
control of property, that person intentionally, knowingly, or recklessly causes
bodily injury to another or places another in fear of imminent bodily injury or
death.  Tex. Penal Code Ann. §
29.02(a).  The offense becomes aggravated robbery if the person committing the
robbery causes serious bodily injury to another or uses or exhibits a deadly
weapon.  Tex. Penal Code Ann. §
29.03(a) (Vernon 2003).  

Appellant complains that no physical evidence links
him to Sartain’s and Curtis’s apartments and that the only evidence connecting
him to the charged offenses is Curtis’s testimony.  The testimony of a single
eyewitness is sufficient to support a jury’s verdict.  See Aguilar v. State,
468 S.W.2d 75, 77 (Tex. Crim. App. 1971).  At trial, Curtis described how he
recognized appellant from the apartment complex.  An investigator testified
that Curtis told officers appellant’s first name and indicated that appellant
lived in an apartment downstairs and across from Curtis’s own apartment, # 505,
which is the same apartment in which investigators found medical cards bearing
appellant’s name.  Curtis, both in his recorded statement and in his trial
testimony, maintained that appellant and Irvin entered his apartment with guns
and took money from him and Sartain and him before they were forced into
Sartain’s apartment.  

Curtis’s account varied somewhat as to who shot
Sartain.  In his recorded statement to investigators, Curtis claimed that both
appellant and Irvin shot at Sartain.  In this statement, Curtis indicated that
appellant shot Sartain in the head and chin; the location of Sartain’s wounds
was corroborated by the autopsy report.  At trial, Curtis testified on direct
examination that Irvin shot Sartain, and then appellant and Irvin turned and
fired at Curtis; however, on cross-examination, Curtis testified that both
appellant and Irvin shot Sartain before taking turns shooting at Curtis.  Curtis’s
account also varied as to the amount of money taken from him, the number of
injuries he sustained from the gunshots, and the length of his hospital stay in
treating his injuries.  

Appellant urges this court to act as a “thirteenth
juror” in considering the inconsistencies offered by Curtis; however, the
weight to be given contradictory testimonial evidence is within the sole
province of the fact-finder.  See Cain v. State, 958 S.W.2d 404, 408
(Tex. Crim. App. 1997).  A fact-finder may judge the credibility of witnesses
and may choose to believe all, some, or none of the testimony presented.  See
id. at 407 n.5.  

Although appellant argues that Curtis’s testimony was
unreliable because of inconsistencies, conflicting testimony does not destroy
the sufficiency of the evidence.  See id. at 410 (providing that a
jury’s decision is not manifestly unjust if the jury resolved conflicting views
of the evidence in favor of the State); Guajardo v. State, 176 S.W.3d 402,
404–05 (Tex. App.—Houston [1st Dist.] 2004, pet. ref’d) (holding evidence
factually sufficient despite allegations that the State’s case rested entirely
on complaining witness’s testimony that was not credible).  Rather,
contradictory evidence affects the weight of the evidence and a witness’s
credibility.  See Cain, 958 S.W.2d at 408–409 (providing that the weight
of contradictory testimonial evidence is within the jury’s sole consideration).


Similarly, though appellant challenges Curtis’s
credibility, characterizing Curtis as a “self-admitted drug dealer and convicted
felon” who lied to police in his statement, the jury, as sole judge of the
credibility of the witnesses and the weight to be given to witness testimony,
may believe all or any part of a witness’s testimony.  See Vasquez v. State,
67 S.W.3d 229, 237–38 (Tex. Crim. App. 2002) (holding evidence not insufficient
for capital murder even if surviving complainant admitted using drugs when
crime occurred). Finally, although appellant complains that Curtis offered
inconsistencies as to the amount of money taken from him, the number of
injuries he sustained, and the length of his hospital stay, none of these
factors definitively favor or contradict the jury’s verdict.  See Cain,
958 S.W.2d at 409 (involving a complaining witness whose testimony was
confusing and conflicting).  

Viewing the evidence in a neutral light, we are not
able to say with some objective basis in the record that appellant=s convictions are clearly
wrong or manifestly unjust because the great weight and preponderance of the
evidence contradicts the jury=s
verdict.  See Vasquez, 67 S.W.3d at 238–39 (holding evidence legally
and factually sufficient to support conviction for capital murder committed in
the course of robbery); Cruz v. State, 238 S.W.3d 381, 388 (Tex.
App.—Houston [1st Dist.] 2006, pet. ref’d) (holding evidence factually
sufficient to support conviction for aggravated robbery despite allegations
that complaint’s testimony identifying the appellant as an assailant was not
credible); see generally Watson, 204 S.W.3d at 417.  We hold that the
evidence is factually sufficient to support appellant=s convictions, and overrule appellant’s two
issues on appeal.

The trial court’s judgment is affirmed.

 

                                                                                    

                                                                        /s/        Kem
Thompson Frost

                                                                                    Justice

 

 

 

Panel
consists of Justices Yates, Frost, and Brown.

Do
Not Publish — Tex. R. App. P. 47.2(b)









[1]
Because a factual-sufficiency
review begins with a presumption that the evidence supporting the jury’s
verdict is legally sufficient, and because appellant challenges only the
factual sufficiency of the evidence, appellant effectively concedes the
evidence is legally sufficient to sustain the convictions.  See Santellan v.
State, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997); Clewis v. State,
922 S.W.2d 126, 134 (Tex. Crim. App. 1996).